**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD ROLAND LAIRD,** | **CIVIL ACTION** |
| **Petitioner,** | |
| | |
| **v.** | |
| | |
| **JOHN E. WETZEL, Acting Secretary,** | **NO. 11-1916** |
| **Pennsylvania Department of Corrections,** | |
| **ROBERT D. GILMORE,**[1] **Superintendent** | |
| **of the State Correctional Institution at** | |
| **Greene, MARK GARMAN,**[2] | |
| **Superintendent of the State Correctional** | |
| **Institution at Rockview, THE DISTRICT** | |
| **ATTORNEY OF THE COUNTY OF** | |
| **BUCKS, and THE ATTORNEY GENERAL** | |
| **OF THE STATE OF PENNSYLVANIA,** | |
| **Respondents.** | |

DuBois, J.                                                                      June 1, 2017
**M E M O R A N D U M**

## I.      INTRODUCTION

By Memorandum and Order dated August 18, 2016, the Court denied state prisoner

Richard Laird's Consolidated Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254

("habeas petition") on a variety of substantive and procedural grounds, and denied a certificate of

appealability.  Presently before the Court is Petitioner's Motion to Alter and Amend Judgment

and Consolidated Brief pursuant to Federal Rule of Civil Procedure 59(e) ("Motion to Alter and

Amend Judgment"), seeking reconsideration of the Court's denial of his habeas petition and

certificate of appealability on four grounds.  For the reasons that follow, petitioner's Motion to

---

[1] Robert D. Gilmore became the Superintendent of the State Correctional Institute at Greene on
March 29, 2014.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Robert D.
Gilmore is substituted for Louis Folino as a respondent in this suit.
[2] Mark Garman became the Superintendent of the State Correctional Institute at Rockview on
July 27, 2015.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mark Garman is
substituted for Marirosa Lamas as a respondent in this suit.

Alter and Amend Judgment is granted with respect to the Court's determination that the failure of counsel on direct appeal to challenge Frank Chester's identification by an ineffective assistance of counsel claim and his testimony by specific reference to the Due Process Clause of the Fourteenth Amendment did not constitute cause for excusing the procedural default of those claims. Upon reconsideration, with respect to that issue—petitioner's due process claim challenging the identification and testimony of Frank Chester—the habeas petition is denied. The Motion to Alter and Amend Judgment is denied in all other respects. Excepting only as noted above, the Memorandum and Order dated August 18, 2016, remains in effect.

## II.     BACKGROUND

The background of this case is set forth in detail in the August 18, 2016, Memorandum and Order. *Laird v. Wetzel, et al.*, Civ. No. 11-1916, 2016 WL 4417258 (E.D. Pa. Aug. 19, 2016) ("*Laird*"). The facts are recited in this Memorandum only as necessary to address the issues presented by petitioner's pending Motion.

### A.  Petitioner's First Conviction

On May 19, 1988, in the Court of Common Pleas of Bucks County, Pennsylvania, petitioner and his co-defendant Frank Chester were convicted of, *inter alia*, first degree murder and kidnapping in relation to the death of Anthony Milano on December 15, 1987. The jury returned a verdict of death against both defendants, and the trial court sentenced petitioner to death on the first degree murder charge and to a "consecutive sentence of not less than 10 nor more than 20 years" on the kidnapping charge. Petitioner was not sentenced in connection with any of the other crimes for which he was convicted, including second and third degree murder.

Petitioner's direct appeal and petition for collateral review of his conviction and sentence were denied. In 1999, petitioner filed a Petition for Writ of Habeas Corpus Under 28 U.S.C.

§ 2254 in this Court.  By Memorandum and Order dated September 5, 2001, this Court granted

that petition in part, and vacated petitioner's first degree murder conviction and death sentence

without prejudice to the right of the Commonwealth of Pennsylvania to re-try petitioner for first

degree murder and, if he was found guilty, to seek the death penalty at sentencing.  *Laird v.*

*Horn*, 159 F. Supp. 2d 58 (E.D. Pa. 2001).  The United States Court of Appeals for the Third

Circuit affirmed the judgment of this Court by Opinion and Order dated July 19, 2005.  *Laird v.*

*Horn*, 414 F.3d 419 (3d Cir. 2005).

**B.  Petitioner's Second Conviction**

In January and February of 2007, petitioner was re-tried on the charge of first degree

murder in the Court of Common Pleas of Bucks County.  On retrial, petitioner stipulated that he

participated in the murder but presented a diminished capacity defense, arguing that he was

unable to form the requisite specific intent for first degree murder or remember the murder.

*Com.v. Laird*, 988 A.2d 618, 624 (Pa. 2010).  As summarized by the Pennsylvania Supreme

Court on direct appeal, petitioner presented substantial expert testimony with respect to this

defense, including opinion testimony that petitioner had organic brain damage.  *Id.*  The jury in

petitioner's second trial rejected the diminished capacity defense and found petitioner guilty of

first degree murder on February 9, 2007.  *Id.*  After hearing evidence presented during the

penalty phase, the jury returned a verdict of death.  *Id.*

Petitioner's direct appeal of his second conviction and sentence were denied.  His petition

for collateral review under the Pennsylvania Post-Conviction Relief Act ("PCRA") was denied

by the Court of Common Pleas of Bucks County.  The Pennsylvania Supreme Court affirmed the

denial of post-conviction relief on all claims by Opinion and Order dated July 20, 2015.

Petitioner filed a Consolidated Petition for Writ of Habeas Corpus and Supporting Memorandum of Law in this Court on February 19, 2016, in which he asserted ten claims for relief. In the Memorandum and Order dated August 18, 2016, this Court denied and dismissed the habeas petition in its entirety and denied a certificate of appealability. Petitioner filed the pending Motion to Alter and Amend Judgment on September 16, 2016. In that Motion, petitioner asks the Court to reconsider its rulings on four claims: Claim V (ineffective assistance of counsel in presenting diminished capacity defense), Claim VI (retrial for first degree murder violated the double jeopardy clause of the Fifth Amendment), Claim VIII (ineffective assistance of counsel for failure to renew motion for change of venue) and Claim IX (identification of Frank Chester and introduction of Chester's testimony violated the Due Process Clause of the Fourteenth Amendment). Respondents filed an Answer in Opposition to Petitioner's Motion to Alter and Amend Judgment and Consolidated Brief. This Motion is thus ripe for review.

## III.   APPLICABLE LAW

Only three situations justify altering or amending a judgment under Federal Rule of Civil Procedure 59(e): "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The moving party has the burden of establishing one of these grounds. *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).

The scope of a motion for reconsideration under Federal Rule of Civil Procedure 59(e) is "extremely limited" and should not be used to relitigate the case. *Id.* A motion for reconsideration "addresses only factual and legal matters that the Court might have overlooked." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (citation

omitted).  "It is improper on a motion for reconsideration to ask the Court to rethink what it already thought through—rightly or wrongly."  *Id.* (citation omitted).

## IV.    DISCUSSION

In his Motion, petitioner does not assert that the law has changed or that new evidence has become available since issuance of the August 18, 2016, Memorandum and Order. Petitioner argues that the Court misapplied the law and/or misconstrued the record with respect to each of petitioner's four claims for relief.  The Court will address each of the challenged rulings in turn.

### A.  Claim V: Ineffective Assistance of Counsel in Presenting Diminished Capacity Defense

Petitioner seeks reconsideration of the Court's denial of his petition and of a certificate of appealability with respect to the Court's conclusion that the Pennsylvania Supreme Court reasonably determined that petitioner was not prejudiced by his trial counsel's failure to introduce medical records of petitioner's multiple head injuries at trial.

#### 1.  *Petition for Writ of Habeas Corpus*

In his habeas petition, petitioner argued that his trial counsel was ineffective for failing to introduce medical records demonstrating the number of head injuries that petitioner had sustained to support his diminished capacity defense.  Consolidated Pet. for Writ of Habeas Corpus & Supp. Mem. ("Pet'r's Br.") 103-06.  Petitioner claimed that these records would have corroborated the reports of head injuries by petitioner and his family that petitioner's expert witness considered in diagnosing petitioner with brain damage and that the prosecution implied were fabricated to support petitioner's diminished capacity argument.  Pet'r's Br. 104-05.

Because the Pennsylvania Supreme Court resolved this claim on the merits, this Court reviewed the claim under the deferential review of 28 U.S.C. § 2254(d).  28 U.S.C. § 2254(d)

forecloses relief on issues adjudicated on the merits by the state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Based on that provision, the Court concluded in the Memorandum dated August 18, 2016, that the Pennsylvania Supreme Court reasonably determined that petitioner suffered no prejudice from his trial counsel's failure to introduce the medical records. In doing so, this Court noted the statement of the Pennsylvania Supreme Court that petitioner's serious head injury in the early 1980s was undisputed and the conclusion of that Court that the contested issue was not whether petitioner had brain damage but whether that brain damage, in concert with other factors, diminished petitioner's capacity to form specific intent. *Laird*, 2016 WL 4417258, at *20. This Court agreed with the conclusion of the Pennsylvania Supreme Court that whether petitioner's brain damage was the result of one or several injuries was ancillary to the question of whether he had the capacity to form specific intent at the time of the murder, and thus, petitioner could not show prejudice from his trial counsel's failure to introduce evidence of multiple, rather than one, head injuries. *Id.*

## 2. *Motion to Alter and Amend Judgment*

In his Motion to Alter and Amend Judgment, petitioner argues that this Court erred in concluding that the Pennsylvania Supreme Court's determination of no prejudice was reasonable because that conclusion, based on the premise that the number of head injuries petitioner suffered was "ancillary" to the determination of diminished capacity, was contradicted by the trial record. Petitioner states that the genuineness of petitioner's brain damage was in fact a "central aspect to the defense." Pet'r's Mot. to Alter & Amend J. ("Pet'r's Mot.") 7. In support

of this position, petitioner reiterates his argument, made in the habeas petition, that medical records of his head injuries would have rebutted the prosecution's suggestion that the reports of head injuries from petitioner and his family were fabricated. *Id.* at 7-9. In his Reply in support of the Motion, petitioner also argues that by failing to introduce the medical records, trial counsel "diminished the experts' proof" on the question of diminished capacity and failed to ensure that the expert witnesses had the relevant background information for their opinions. Pet'r's Reply in Supp. Mot. ("Pet'r's Reply") 3-4.

The Court concludes petitioner has failed to show that it erred in determining that the decision of the Pennsylvania Supreme Court on this issue was reasonable. First, petitioner's arguments in his Motion reiterate the arguments presented in the habeas petition which the Court has already considered and rejected. *See Glendon Energy Co.*, 836 F. Supp. at 1122 ("It is improper on a motion for reconsideration to ask the Court to rethink what it already thought through . . . ." (citation omitted)). Second, even though the Court rejected petitioner's argument that the Pennsylvania Supreme Court unreasonably concluded that he suffered no prejudice, this Court appreciated the centrality of brain damage to petitioner's diminished capacity defense. Petitioner misconstrues the Court's reasoning—the Court did not state that the genuineness of petitioner's *brain damage* was ancillary to the question of whether he formed specific intent on the night of the murder. Rather, the Court concluded that, based on the record, the Pennsylvania Supreme Court reasonably determined that the *number* of head injuries petitioner had suffered was ancillary to his ability to form specific intent, and thus petitioner could not show prejudice from his trial counsel's failure to introduce evidence of multiple head injuries. *Laird*, 2016 WL 4417258, at *20. Thus, petitioner has not met his burden of showing a clear error of law or fact requiring reconsideration of the Court's judgment.

For the same reasons, the Court concludes that reconsideration of its denial of a certificate of appealability on this issue is not warranted because petitioner has not shown a clear error of law or fact in the Court's previous determination that petitioner had not satisfied the standard for a certificate of appealability. Petitioner did not make a substantial showing in his habeas petition, and has not made a substantial showing in the pending Motion, that reasonable jurists would debate whether the habeas petition states a valid claim of the denial of constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (describing the "substantial showing" requirement for a certificate of appealability under 28 U.S.C. § 2253(c)).

### B. Claim VI: Retrial for First Degree Murder Violated the Double Jeopardy Clause of the Fifth Amendment

Petitioner seeks reconsideration of the Court's denial of a certificate of appealability with respect to the Court's conclusion that retrial for first degree murder following petitioner's conviction for third degree murder, not attacked in any post-trial proceeding, did not violate the Double Jeopardy Clause of the Fifth Amendment.

#### 1. *Petition for Writ of Habeas Corpus*

In his habeas petition, petitioner argued that his retrial, conviction, and sentence for first degree murder violated the Double Jeopardy Clause of the Fifth Amendment because his conviction for the lesser included offense of third degree murder had not been vacated. Pet'r's Br. 116-18.

In the August 18, 2016, Memorandum and Order, this Court concluded that the petitioner's double jeopardy claims were not meritorious. *Laird*, 2016 WL 4417258, at *30. The Court agreed with petitioner that the offense of first degree murder and the lesser included offense of third degree murder were the "same offense" for double jeopardy purposes under *Blockburger v. United States*, 284 U.S. 299 (1932). *Laird*, 2016 WL 4417258, at *31. However,

the Court decided that petitioner's retrial for first degree murder was constitutional because the Double Jeopardy Clause (1) "'does not prohibit the state from prosecuting [a defendant] for [greater and lesser included] multiple offenses in a single prosecution,'" *id.* (quoting *Ohio v. Johnson*, 467 U.S. 493, 500 (1984)), and (2) "does not prohibit retrial of charges that were reversed or vacated for trial error as opposed to evidentiary insufficiency," *id.* (citing *Ball v. United States*, 163 U.S. 662, 672 (1896)). The Court stated that "[t]he fact that these two events—neither of which amounts to a constitutional violation—occurred in succession in petitioner's case does not create a new type of double jeopardy violation." *Id.* In addition, the Court relied on the reasoning of the United States Court of Appeals for the Ninth Circuit in *United States v. Jose*, 425 F.3d 1237 (9th Cir. 2005), the facts of which presented a virtually identical situation to petitioner's case, in concluding that the constitutional protections of the Double Jeopardy Clause were not violated by petitioner's retrial, conviction, and sentence for first degree murder. *Laird*, 2016 WL 4417258, at *32.

### 2. *Motion to Alter and Amend Judgment*

In his Motion to Alter and Amend Judgment, petitioner argues that the Court erred in denying a certificate of appealability on this issue because (1) the Court's determination that the retrial of petitioner for first degree murder did not constitute double jeopardy contradicts the Court's conclusion elsewhere in the August 18, 2016, Memorandum that an instruction on third degree murder on retrial would have resulted in double jeopardy and (2) reasonable jurists would debate the Court's assessment of petitioner's constitutional claims. Pet'r's Mot. 12-17.

The Court concludes that petitioner has not demonstrated that the Court erred in denying a certificate of appealability. First, the Court's conclusion that a jury instruction on third degree murder would constitute double jeopardy is not inconsistent with its conclusion that petitioner's

retrial for first degree murder did not constitute double jeopardy. The Court's determination that an instruction on third degree murder would constitute double jeopardy was based on the fact that petitioner had been convicted of third degree murder and that conviction had not been reversed. While the Court agreed that petitioner was correct in stating that third degree murder was the "same offense" as first degree murder under *Blockburger*, it held that the Double Jeopardy Clause had not been violated by petitioner's retrial because petitioner had been charged with both offenses in his first prosecution and had no legitimate expectation of finality in the final judgment of conviction on the first degree murder charge because of his appeal. *Laird*, 2016 WL 4417258, at *31-32. The Court reasoned that even though jeopardy had terminated with respect to third degree murder at the entry of the final judgment on that conviction at petitioner's first trial, jeopardy had continued with respect to first degree murder because of petitioner's successful appeal. *Id.* The Court's conclusion that a jury instruction on third degree murder, an undisturbed conviction, would constitute double jeopardy does not undermine this analysis.

Second, the Ninth Circuit's disapproval of the situation faced by petitioner—entry of judgment of conviction by the trial court on both greater and lesser included offenses—in the *Jose* case does not establish that reasonable jurists would debate whether double jeopardy bars retrial in that situation. While the Ninth Circuit directs its district courts to avoid this situation by entering a judgment of conviction only on the greater offense when a jury convicts on both greater and lesser included offenses, the *Jose* court still concluded that the standing conviction for the lesser included offense did not bar retrial on the successfully appealed greater offense.

Third, the Court rejects petitioner's contention that *Jose* conflicts with other Ninth Circuit authority with respect to the specific situation faced by petitioner. The case cited by petitioner as

conflicting with *Jose, Wilson v. Czerniak*, 355 F.3d 1151 (9th Cir. 2004), is factually distinguishable from both *Jose* and this case. In *Wilson*, the petitioner was acquitted on the lesser included offense and the jury hung on the greater offense. 355 F.3d at 1154. The Ninth Circuit concluded that the petitioner's *acquittal* on a lesser included offense barred retrial on the greater offense. *Id.* In contrast, both the petitioner in *Jose* and petitioner in this case were *convicted* of both the lesser included offense and the greater offense at their first trials, successfully appealed the conviction with respect to the greater offense only, and were retried for the greater offense alone. *Jose* thus addresses a situation that *Wilson* does not—the situation at issue in this case.

Fourth, the Court rejects petitioner's argument that the Ninth Circuit's reasoning in *Jose*, and the Court's reasoning in this case, conflicts with Supreme Court precedent. In the case cited by petitioner, *Brown v. Ohio*, the Supreme Court held that conviction and punishment on lesser included offense barred a *subsequent* prosecution for the greater offense. 432 U.S. 161, 169 (1977). *Brown* is factually distinguishable from both *Jose* and this case, as the petitioner in *Jose* and petitioner in this case were charged with, convicted of, and sentenced on the greater offense in their first prosecutions, and neither was sentenced on the lesser included charges. Thus, the situation at issue in this case and in *Jose* does not implicate the concerns addressed by *Brown*— "attempts to relitigate the facts underlying the acquittal" and "attempts to secure additional punishment after a prior conviction and sentence." *Id.* at 166 (citations omitted). In this case, the conviction sought on retrial was the conviction that petitioner successfully appealed, not an additional conviction. *Jose* itself distinguishes *Brown* in a similar manner, stating that the Supreme Court noted in *Brown* that it "was 'not concerned . . . with the double jeopardy questions that may arise when a defendant is retried on the same charge after . . . a conviction is

reversed on appeal.'" *Jose*, 425 F.3d at 1242 (citing *Brown*, 432 U.S. at 165 n.5).

Finally, the Court rejects petitioner's argument that double jeopardy is implicated because "a retrial on the greater offense *necessarily* involves a retrial on all elements of the lesser included offense." Pet'r's Mot. 16 (emphasis in original). In petitioner's case, retrial on the greater offense did not necessitate retrial on any elements of the lesser included offense of third degree murder—"the only remaining question for the jury was whether he acted with a specific intent to kill, thus making him guilty of first-degree murder." *Com.v. Laird*, 988 A.2d at 624.

For all of the foregoing reasons, the Court concludes that petitioner has not shown that the Court erred in not issuing a certificate of appealability with respect to his double jeopardy claim.

## C. Claim VIII: Ineffective Assistance of Counsel for Failure to Renew Motion for Change of Venue

Petitioner seeks reconsideration of the Court's denial of his habeas petition and of a certificate of appealability with respect to its conclusion that the Pennsylvania Supreme Court reasonably determined that petitioner had not shown that he suffered prejudice on retrial from pretrial publicity and thus could not show that trial counsel was ineffective for failing to renew a motion for change of venue based on pretrial publicity.

### 1. Petition for Writ of Habeas Corpus

In his habeas petition, petitioner argued that the Pennsylvania Supreme Court's decision with respect to his ineffective assistance of counsel claim for failure to renew a motion for change of venue was unreasonable in light of the state record. Petitioner argued that the Pennsylvania Supreme Court unreasonably limited its review of pretrial publicity to the two newspaper articles submitted by trial counsel during jury selection and mischaracterized the newspaper articles as not presumptively prejudicial despite the fact that the articles discussed

petitioner's prior conviction and sentence. Pet'r's Br. 138. In support of his argument that the media coverage was presumptively prejudicial because it referred to his previous conviction and death sentence, petitioner relied on *United States v. Casellas-Toro*, 807 F.3d 380, 386-87 (1st Cir. 2015) (considering the four factors articulated in *Skilling v. United States*, 561 U.S. 358 (2010), to find that pretrial publicity was presumptively prejudicial). Pet'r's Br. 134-38. Petitioner also argued that the conclusion of the Pennsylvania Supreme Court that he suffered no actual prejudice was unreasonable because jury panel members had been discussing newspaper articles about the case during jury selection and a seated juror had knowledge of the case. Pet'r's Br. 138-40.

Because the Pennsylvania Supreme Court resolved this claim on the merits, the Court reviewed this claim under the deferential review of 28 U.S.C. § 2254(d) and concluded that the Pennsylvania Supreme Court reasonably rejected petitioner's claim that he had suffered prejudice, either presumed or actual, by his trial attorney's failure to renew a motion for change of venue. *Laird*, 2016 WL 4417258, at *10-12. With respect to his claim of presumed prejudice and argument that the Pennsylvania Supreme Court unreasonably limited its analysis of presumption of prejudice to the two newspaper articles submitted by trial counsel, this Court determined that petitioner "had failed to demonstrate (1) that he produced additional articles or evidence of publicity for the state court to examine and (2) that there was any additional publicity that his counsel should have submitted to the trial court in support of a renewed motion for change of venue." *Id.* at *10. In so concluding, this Court analyzed the seven additional articles produced by petitioner in support of his habeas petition and determined that four of the articles could have had little or no effect on jury selection in 2007—one was published in 1988 and three were published after jury selection. *Id.* With respect to the remaining three articles,

this Court stated they did not undermine the decision of the Pennsylvania Supreme Court because they were predominantly factual and not inflammatory. *Id.*

This Court distinguished *Casellas-Toro* from this case based on the level of coverage, the quality of the coverage, and the size of the community, and determined that petitioner had not shown that the media coverage was so overwhelming and prejudicial that no impartial jury could be assembled. *Id.* The Court also concluded that that petitioner mischaracterized *Casellas-Toro* as standing for the proposition that the mere disclosure of a previous jury's opinion in the same case may prejudice the jury pool. *Id.* at *11. Rather, the statement in *Casellas-Toro* that jury panel members "may have difficulty disbelieving or forgetting the opinion of another jury" was only part of the broader inquiry into the nature of the media coverage. *Id.* The Court concluded that the correct inquiry was not whether a previous verdict was revealed but whether the nature of that publicity was so "pervasive and inflammatory" that, in combination with the other *Skilling* factors, the publicity resulted in presumed prejudice. *Id.*

This Court also determined that the Pennsylvania Supreme Court reasonably decided that petitioner had not shown actual prejudice. This Court rejected petitioner's argument that the mere fact that potential jurors had knowledge about petitioner or the crime demonstrated actual prejudice. *Id.* Instead, this Court stated that the correct inquiry was into the number of venire persons who had formed an opinion about petitioner's guilt that could not be set aside. *Id.* The record demonstrated that only a small percentage of potential jury members knew about the case, and only one of 150 potential jurors stated that his knowledge of the case would affect his impartiality. *Id.* The only seated juror with knowledge of the case testified that he had no preconceptions about petitioner's guilt, and this Court determined that the Pennsylvania Supreme Court reasonably concluded that petitioner had not shown actual prejudice based on that

testimony.  *Id.* at *12.

### 2.  *Motion to Alter and Amend Judgment*

 In his Motion to Alter and Amend Judgment, petitioner argues that the Court erred in determining that the Pennsylvania Supreme Court reasonably concluded that petitioner had not demonstrated either presumed or actual prejudice stemming from the pretrial media coverage. Specifically, petitioner contends that the Court "unduly minimized" the prejudice that resulted from "the juror's knowledge of an earlier death sentence" in its analysis of presumed prejudice, incorrectly distinguished *Casellas-Toro,* and ignored "the distinct and inherent prejudice that results when a capital jury learns that a previous jury has sentenced the defendant to death for the same crime."  Pet'r's Mot. 3-4.  In support of his argument that knowledge of a defendant's prior sentence is inherently prejudicial, petitioner cites to multiple state cases and a case from the United States Court of Appeals for the Fourth Circuit.  *Id.*

This Court concludes that petitioner has not demonstrated that it erred in determining that the Pennsylvania Supreme Court reasonably determined that petitioner did not suffer prejudice. First, to the extent that petitioner's argument is that he disagrees that the publicity in *Casellas-Toro* is factually distinguishable from the publicity in this case, mere disagreement with the Court's conclusion is insufficient to meet the burden for granting a motion for reconsideration. *See Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002) (stating that a motion for reconsideration should not be used "as an attempt to relitigate a point of disagreement between the Court and the litigant" (quotation marks and citation omitted)).  The Court also notes that, while it distinguished *Casellas-Toro* on the ground that that case did not concern a trial for the same offense, but rather for a factually related offense, the primary basis for distinguishing *Casellas-Toro* from this case was the factual differences between the two cases,

including the level and quality of pretrial media coverage.

Second, the Court rejects petitioner's argument that it ignored the existence of any inherent prejudice that occurs when a jury learns that a previous jury has sentenced defendant to death for the same crime. The cases cited by petitioner do not demonstrate that the Court erred in determining that the pretrial publicity was not inherently prejudicial or that petitioner did not suffer actual prejudice. In *People v. Wooley*, the Illinois Supreme Court concluded that there was reversible error where ten of the seated jurors were informed by the judge during venire that the defendant had been previously sentenced to death. 793 N.E.2d 519, 524-25 (Ill. 2002). In this case, by contrast, petitioner did not demonstrate that any of the seated jurors had knowledge of his previous sentence or that a significant number of the members of jury pool had knowledge of his prior sentence.

Likewise, the other cases cited by petitioner do not demonstrate a clear error of law or fact in the previous ruling of this Court. Petitioner's case differs from the cases he cites—he has not demonstrated that any of the seated jurors were informed during the trial of petitioner's previous sentence. *See State v. Rimmer*, 250 S.W.3d 12, 32-33 (Tenn. 2008) (finding no reversible error where seated jury was informed at sentencing that the defendant had previously been on death row because the information had been revealed by a defense witness in response to defense counsel's question); *Hammond v. State*, 776 So.2d 884, 889 (Ala. Crim. App. 1998) (reversible error when the prosecutor commented on the defendant's previous sentence during sentencing phase of the defendant's second trial); *Fullwood v. Lee*, 290 F.3d 663, 682 (4th Cir. 2002) (concluding that defendant was entitled to an evidentiary hearing when a seated juror alleged that the jury was informed by outside sources that the defendant had been sentenced to death by another jury). Thus, the Court concludes that petitioner has not shown that it erred in

concluding that the Pennsylvania Supreme Court reasonably determined that petitioner had not suffered prejudice.

For the foregoing reasons, the Court also concludes that reconsideration of its denial of a certificate of appealability on this issue is not warranted because petitioner has not shown that the Court erred in its previous determination that petitioner had not satisfied the standard for a certificate of appealability. Petitioner has not made a substantial showing that reasonable jurists would debate whether petitioner's ineffective assistance of counsel claim for failure to renew a motion for change of venue states a valid claim of the denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack*, 529 U.S. at 484.

### D. Claim IX: Identification of Frank Chester and Introduction of Chester's Testimony Violated the Due Process Clause of the Fourteenth Amendment

Petitioner seeks reconsideration of the Court's denial of a certificate of appealability with respect to the Court's conclusion that petitioner failed to show cause to overcome the procedural default of his due process claim challenging the constitutionality of the identification of Frank Chester in court after Chester had asserted his Fifth Amendment privilege and the later introduction of Chester's testimony from the 1988 trial. Petitioner does not challenge the determination of the Court in the August 18, 2016, Memorandum that both aspects of this claim are procedurally defaulted.

#### 1. Petition for Writ of Habeas Corpus

In his habeas petition, petitioner claimed that his right to due process under the Fourteenth Amendment was violated when Frank Chester, petitioner's co-defendant in the 1988 trial, was identified in court at petitioner's retrial as petitioner's co-conspirator after Chester had invoked his Fifth Amendment privilege against self-incrimination. Pet'r's Br. 141, 148-49. Petitioner also claimed that his right to due process was violated when the prosecution

introduced Chester's testimony from the 1988 trial, which the prosecution "believed was false and inconsistent with the physical evidence." Pet'r's Br. 151.[3]

In its August 18, 2016, Memorandum, this Court concluded that both aspects of petitioner's due process claim were procedurally defaulted and unable to be reviewed. This Court determined that the part of petitioner's due process claim challenging Chester's identification was procedurally defaulted because the Pennsylvania Supreme Court had disposed of the claim on an adequate and independent state ground, namely, that petitioner's trial counsel had failed to contemporaneously object to Chester's identification before the jury. *Laird*, 2016 WL 4417258, at *23. This Court determined that the part of petitioner's due process claim challenging the use of Chester's prior testimony was procedurally defaulted because the claim was not properly exhausted before the state courts. *Id.* at *24-25. Continuing in the Memorandum dated August 18, 2016, the Court concluded that there were no grounds for excusing the procedural default of either part of the due process claim because petitioner had not demonstrated cause or prejudice. *Id.* at *25. In so concluding, the Court stated that "[t]he experienced counsel who represented petitioner on direct appeal should have (1) discovered that no objection was raised when Chester was identified and, therefore, should have challenged that identification by an ineffective assistance of counsel claim and (2) cited to a federal case or explicitly mentioned the Due Process Clause in arguing that Chester's prior testimony was false, or presented evidence demonstrating that the prosecutor knew that Chester perjured himself in 1988." [4] *Id.*

---

[3] In his briefs before the Pennsylvania state courts, petitioner asserted this claim under the Confrontation Clause of the Sixth Amendment. Petitioner did not assert a Sixth Amendment claim in his habeas petition before this Court. *Laird*, 2016 WL 4417258, at *22-23.

[4] In determining that the petitioner's due process challenge to Chester's testimony was not properly exhausted, the Court also stated in the August 18, 2016, Memorandum that "petitioner

## 2. *Motion to Alter and Amend Judgment*

In his Motion to Alter and Amend Judgment, petitioner argues that reasonable jurists would debate the Court's conclusion that, because his counsel on direct appeal "should have" appropriately challenged Chester's identification by an ineffective assistance of counsel claim, petitioner did not establish cause to overcome procedural default. Pet'r's Mot. 11. Petitioner claims that, because he had a right to effective assistance of counsel on direct appeal, the ineffective assistance of his appellate counsel may establish cause for the procedural default of his ineffective assistance of counsel claim for his trial counsel's failure to object to Chester's identification. Pet'r's Mot. 11 (citing *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)). Petitioner moves only for reconsideration of the Court's denial of a certificate of appealability with respect to this claim; he does not argue that the Court should reconsider the underlying ruling.

On this issue, the Court concludes that it erred by stating, without further explanation, that petitioner did not show cause for the procedural default of this aspect of his due process claim based on the fact that counsel on direct appeal failed to challenge the identification of Chester as ineffective assistance of counsel. Under Pennsylvania law, "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity." *Com. v. Grant*, 813 A.2d 726, 738 (Pa. 2002). In short, appellate counsel was not required to raise an ineffective assistance of trial counsel claim on direct appeal.

While not argued by petitioner in the Motion to Alter and Amend Judgment, the Court

---

has not produced any evidence that Chester's 1988 testimony was, in fact, false, or that the prosecutor in 1988 knew it to be false and presented it anyway." *Laird*, 2016 WL 4417258, at *25. The relevant prosecutor's knowledge is the prosecutor in 2007.

concludes that it mistakenly stated in the Memorandum dated August 18, 2016, that petitioner did not establish cause with respect to the part of his due process claim that challenged the introduction of Chester's testimony for the stated reason that his counsel on direct appeal failed to specifically refer to the Due Process Clause or present evidence that the prosecutor in 1988 knowingly presented perjured testimony.  Because petitioner had a right to effective assistance of counsel on direct appeal, *Evitts*, 469 U.S. at 396-97, an error of counsel on direct appeal could establish cause to overcome procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  Thus, without more of an explanation, it was insufficient to state that petitioner did not establish cause because his counsel on direct appeal erred.

Petitioner has satisfied his burden of establishing a ground for reconsideration—the need to correct a clear error of law in the August 18, 2016, Memorandum and Order—with respect to the Court's conclusion that petitioner did not demonstrate cause because counsel on direct appeal failed to properly raise either aspect of his due process claim.

  3. *Reconsideration of the August 18, 2016, Memorandum and Order with respect to Claim IX (Frank Chester's Identification and Testimony)*

On reconsideration, the Court need not determine whether petitioner has shown cause and prejudice to excuse the procedural default of either part of his due process claim—the identification of Chester before the jury or the use of Chester's testimony from the 1988 trial. Rather, the Court concludes that petitioner's arguments with respect to the identification and testimony of Chester under the Due Process Clause of the Fourteenth Amendment are without merit and denies his habeas petition with respect to this claim on that ground.  Under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  *See also Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007) ("[B]ecause we will deny all

of Taylor's claims on the merits we need not address exhaustion." (citing 28 U.S.C. § 2254(b)(2)). The Court addresses each due process argument in turn.

a. Factual Background

At petitioner's retrial in 2007, the Commonwealth sought Chester's testimony in the guilt phase as part of its case-in-chief. During a morning session, in the absence of the jury, Chester was brought to the courtroom in his prison clothing and, as the parties had anticipated, he asserted his Fifth Amendment privilege against self-incrimination. Retrial Tr. 13-16, Feb. 7, 2007. Judge Boylan then found Chester unavailable as a witness. *Id.* at 13-16. Chester was removed from the witness stand but remained in the courtroom at the prosecutor's request. *Id.* at 16. Chester was seated in the first row of the courtroom. *Id.* After the jury returned to the courtroom, the Commonwealth called Detective Robert Potts to testify. *Id.* at 17. Detective Potts identified Chester and testified that "no one else has ever been arrested for this murder other than Frank Chester and Richard Laird." *Id.* at 18-19. Petitioner's trial counsel did not object to Chester's identification before the jury. *Id.* at 18-22. Chester was then removed from the courtroom in the jury's presence. *Id.* at 22.

That afternoon, the Commonwealth sought to introduce Chester's testimony from petitioner's and Chester's first trial in 1988. *Id.* at 130. At that trial, Chester and petitioner each testified and asserted that the other man was fully responsible for Anthony Milano's murder. Trial Tr. 478-80, 548, 654-66, May 18, 1988. Prior to the introduction of Chester's testimony at petitioner's retrial, Judge Boylan instructed the jury, in relevant part, as follows:

> This testimony was given at a prior proceeding where Frank Chester's criminal responsibility was at issue. Frank Chester was convicted at a prior proceeding of murder and related offenses . . . .
>
> . . . I want to give you an instruction as well with respect to Mr. Chester's testimony because he was an accomplice. Put simply, an accomplice is a person

who knowingly and voluntarily cooperated with or aids another person in committing an offense.

There are special rules that apply to accomplice testimony. First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source. Second, you should examine the testimony of an accomplice closely and accept it only with care and caution. Third, you should consider whether the testimony of an accomplice is supported in whole or in part by other evidence.

Retrial Tr. 131, Feb. 7, 2007. Chester's testimony from 1988 was then read into the record in its entirety. *Id.* at 132-40; Retrial Tr. 92, Feb. 9, 2007.

During deliberations, the jury sent Judge Boylan the following written question: "Should any significance be attached to the fact that Frank Chester was brought into the courtroom without testifying?" Retrial Tr. 90, Feb. 9, 2007. In response, Judge Boylan told the jury: "The simple answer is no. No significance should be attached to that. I will tell you that Frank Chester was unavailable to either side as a witness in this case." *Id.* at 90-91.

### b. Identification of Chester Before the Jury

In his habeas petition, petitioner argues that his right to due process under the Fourteenth Amendment was violated by Chester's identification before the jury and the prosecution's introduction of Chester's testimony because this amounted to Chester asserting his Fifth Amendment privilege in front of the jury. Pet'r's Br. 148-49. Petitioner argues that this constitutes reversible, constitutional error because "a jury may not consider that a witness has chosen to exercise his Fifth Amendment privilege because this invites the jury to make an impermissible inference" with respect to the witness's guilt. *Id.* (citing *Bowles v. United States*, 439 F.2d 536, 542 (D.C. Cir. 1970)).

In addition to arguing that petitioner had procedurally defaulted this claim, respondents

state that the record does not permit anything "more than pure speculation that the jury concluded Chester had invoked his right against self-incrimination," and that, "even if . . . there was some reasonable basis to believe" that the jury had concluded that Chester had invoked his Fifth Amendment privilege, there were no impermissible inferences to be drawn because it was undisputed that petitioner had murdered Milano and that Chester had participated in the murder. Answer to Pet'r's Br. 136-37 (Document No. 42, filed Apr. 19, 2016).

### i. Legal Standard

"It is well settled that the jury is not entitled to draw any inferences from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." *Bowles*, 439 F.2d at 542. However, reversible error is not automatically committed where "a witness claims his privilege not to answer" in the presence of the jury. *Todaro v. Fulcomer*, 944 F.2d 1079, 1083 (3d Cir. 1991). In *Namet v. United States*, 373 U.S. 179 (1963), the Supreme Court of the United States, in concluding on direct appeal that there was no reversible error where the witness invoked the Fifth Amendment in the presence of the jury, "observed that the case before it was not one in which a witness' refusal to testify is the only source, or even the chief source, of the inference that the witness engaged in criminal activity with the defendant." *Todaro*, 944 F.2d at 1083 (citing *Namet*, 373 U.S. at 189); *see also United States v. Victor*, 973 F.2d 975, 979 (1st Cir. 1992) (stating that reversible error from "a witness' assertion of his or her Fifth Amendment rights in the presence of the jury" may result "from prosecutorial misconduct when the government [attempts] to build its case out of inferences arising from the witness' assertion of the Fifth Amendment-privilege" or, "in the circumstances of a given case, . . . where inferences from a witness' refusal to answer add critical weight to the prosecution's case." (quotation marks and citations omitted)).

*ii. Discussion*

The Court concludes that petitioner's argument that the identification of Chester before the jury after asserting his Fifth Amendment privilege against self-incrimination amounts to a due process violation under the Fourteenth Amendment is without merit.

First, the identification of Chester in the courtroom and the later introduction of Chester's testimony from the 1988 trial were not equivalent to Chester asserting his Fifth Amendment privilege before the jury. Chester did not assert his Fifth Amendment privilege in the presence of the jury, and there was no mention of the Fifth Amendment before the jury. Retrial Tr. 13-16, Feb. 7, 2007. When the jury asked Judge Boylan whether any significance should be given to the lack of in-person testimony by Chester, Judge Boylan instructed the jury that "no significance should be attached to that" and stated that Chester was unavailable for both sides. Retrial Tr. 90-91, Feb. 9, 2007. At no point was the jury informed that Chester had asserted his Fifth Amendment privilege against self-incrimination.

Second, even if Chester's identification in the courtroom and later introduction of his testimony were the equivalent of asserting the Fifth Amendment privilege in the presence the jury, Chester's refusal to testify was not the "only source, or even the chief source, of the inference" that Chester engaged in criminal activity with petitioner. *Todaro*, 944 F.2d at 1083. The fact that Chester and petitioner had engaged in criminal activity together was not in dispute. For example, in closing argument, petitioner's counsel stated, "The defendant is guilty of murder. He along with Frank Chester killed Anthony Milano. There's no question about it. There's no issue about it." Retrial Tr. 6, Feb. 9, 2007. The jury was instructed that Chester had been convicted of murder before hearing his testimony from 1988. Retrial Tr. 131, Feb. 7, 2007. Thus, any inference from Chester's assertion of his Fifth Amendment privilege would not have

been relevant to the only question at issue in this case—whether petitioner had the requisite mental state when he killed Milano such that he was guilty of first degree murder.

Therefore, the Court concludes that petitioner's due process claim with respect to the identification of Chester before the jury is without merit.

### c. Frank Chester's Testimony

In his habeas petition, petitioner argues that he was denied due process when the prosecutor in 2007 knowingly introduced false statements made by Chester during his testimony in 1988. Petitioner argues that his due process rights were violated because "the Commonwealth presented evidence that it believed was false and inconsistent with the physical evidence," namely, that Chester testified that he was not involved in the killing and that petitioner was solely to blame for Anthony Milano's death. Continuing, petitioner argues that "[i]f the Commonwealth believed Chester's first trial testimony, no such charges would have been filed against him," and offers as additional evidence that Chester's testimony was false the fact that the prosecution in 1988 attacked Chester's credibility and that Chester was convicted on all counts. Pet'r's Br. 151; Reply in Supp. Pet'r's Br. 39-40. Petitioner contends that it was "reasonably likely that the jury relied on [Chester's] testimony when they rejected Petitioner's diminished capacity defense," Pet'r's Br. 151, and that Chester's testimony "materially misled the jury about the relative culpability of the two perpetrators," Reply in Supp. Pet'r's Br. 40. Furthermore, petitioner contends that respondents admitted the significant effect of Chester's testimony on the jury's verdict because they stated that "it was 'important to hear the only available evidence' describing the 'critical hours'" between Milano, Chester, and petitioner's departure from the bar and Chester and petitioner's arrival at Griscavage's apartment. Reply in Supp. Pet'r's Br. 39 (quoting Answer to Pet'r's Br. 141).

###### i. Legal Standard

A criminal defendant's right to due process is violated by "the state's knowing use of perjured testimony to obtain a conviction." *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004). This includes situations "'when the government, although not soliciting false evidence, allows it go uncorrected when it appears at trial.'" *Id.* (quoting *United States v. Biberfeld*, 257 F.2d 98, 102 (3d Cir. 1992) (citation omitted)). To establish this violation, a criminal defendant must show that: (1) the testimony was perjured; (2) "the government knew or should have known of [the] perjury; (3) the testimony went uncorrected; and (4) there is a reasonable likelihood that the false testimony could have affected the verdict." *Id.* "A witness commits perjury if he or she 'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008) (citation omitted).

###### ii. Discussion

In sum, petitioner argues that the prosecutor in 2007 knowingly presented Chester's perjured testimony from 1988 because the prosecution believed Chester was an unreliable witness and Chester was convicted of murder despite testifying that petitioner was solely responsible for Milano's death. The Court disagrees.

First, excepting the portion of Chester's testimony in which he denied involvement in Milano's murder, petitioner has not presented evidence that Chester's testimony was false or that the prosecutor in 2007 knew it was false. Even if the Court assumes that Chester testified that he did not participate in the murder "with the willful intent to provide false testimony," *Hoffecker*, 530 F.3d at 183, the fact that Chester was then convicted of murder does not mean that the entirety of his testimony was perjured. There is certainly evidence in the record that both parties

believed Chester was an unreliable source. The prosecutor argued in closing that the jury needed evidence "that corroborates Frank Chester[.] Because you need that, you really do. You just can't rely on Frank Chester and Richard Laird's words." Retrial Tr. 40, Feb. 9, 2007. Similarly, the defense argued in closing that "One of the things about Frank Chester, you know he's not telling the truth, the whole truth, and nothing but the truth. You know that. The question you're going to have to decide is when is he telling the truth and when is he not telling the truth and why and how could we tell that?" Retrial Tr. 18, Feb. 9, 2007. Furthermore, Judge Boylan instructed the jury prior to the introduction of Chester's testimony from 1988 that the testimony was "from a corrupt and polluted source" and thus required additional scrutiny. Retrial Tr. 131, Feb. 7, 2007. However, petitioner presents no evidence which demonstrates that Chester's testimony, excepting his assertions that he did not participate in the murder, was in fact false, or that the prosecutor in 2007 knew that such testimony was false.

Second, petitioner does not satisfy the requirement that the perjury remained uncorrected. Assuming that Chester perjured himself in 1988 when he stated that he did not participate in the murder, this testimony did not remain uncorrected before the jury—it was undisputed at petitioner's retrial that Chester had participated in the murder and the jury was informed that Chester had been convicted of murder. *See Ford v. Superintendent, SCI-Frankville*, No. 12-CV-01278, 2013 WL 5457801, at *5 (E.D. Pa. Sept. 19, 2013) (overruling the petitioner's objection to Report and Recommendation on the ground that the prosecution did not violate the Fourteenth Amendment because "the prosecution in the present case did not allow false testimony to go uncorrected").

Therefore, the Court concludes that petitioner's argument that he was denied due process because the prosecution knowingly introduced Chester's false testimony is without merit. The

Consolidated Petition for Writ of Habeas Corpus is thus denied with respect to petitioner's claim that the identification and testimony of Frank Chester violated the Due Process Clause of the Fourteenth Amendment.

A certificate of appealability will not issue because reasonable jurists would not debate whether petitioner's challenge to the identification and testimony of Frank Chester under the Due Process Clause of the Fourteenth Amendment states a valid claim of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack,* 529 U.S. at 484.

### E. Petitioner's Challenge to His PCRA Counsel's Representation with Respect to the Testimony Challenged as Victim Impact Evidence (Claim III)

In letters to the Court dated January 28, 2017, and February 26, 2017, petitioner challenged the effectiveness of his current counsel's representation during his PCRA proceedings on the ground that his federal constitutional arguments with respect to the testimony he challenged as victim impact evidence were not exhausted before the state courts. Letter from Richard Laird (Feb. 26, 2017), at 2. In concluding that petitioner had not exhausted this claim before the state courts, this Court determined in the August 18, 2016, Memorandum that he had not sufficiently raised the federal constitutional challenges to this testimony in his PCRA petition or in his collateral appeal to the Pennsylvania Supreme Court. *Laird*, 2016 WL 4417258, at *44.

The Court need not address the question of whether petitioner's PCRA counsel was ineffective or whether such ineffective assistance of counsel could serve as cause to overcome the procedural default of petitioner's federal constitutional claims. In the Memorandum dated August 18, 2016, this Court concluded that petitioner "has not demonstrated prejudice caused by the admission of the testimony challenged as victim impact evidence or from the prosecutor's argument." *Id.* at *45. The Court referred to its earlier discussion of the effect of this evidence, which was as follows:

> The minimal testimony was presented early during the five-day guilt phase, and, in the context of the totality of the evidence that the jury heard about the crime and about petitioner as an individual, was unlikely to have influenced the jury over one week later at the end of the penalty phase. Petitioner has also failed to demonstrate that the prosecutor's argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. Viewed in the context of the entire penalty proceeding, the challenged comments by the prosecutor were brief, isolated remarks that did not exceed constitutional bounds.

*Id.* at *43 (quotation marks and citations omitted). Because petitioner has not shown prejudice, the procedural default of this claim cannot be excused.

## V.      CONCLUSION

For the foregoing reasons, petitioner's Motion to Alter and Amend Judgment is granted with respect to the Court's determination that the failure of counsel on direct appeal to challenge (1) Frank Chester's identification by an ineffective assistance of counsel claim and (2) Frank Chester's testimony by specific reference to the Due Process Clause of the Fourteenth Amendment did not constitute cause for excusing the procedural default of that claim. Upon reconsideration, with respect to that issue—petitioner's due process claim challenging the identification and testimony of Frank Chester—the Consolidated Petition for Writ of Habeas Corpus is denied. The Motion to Alter and Amend Judgment is denied in all other respects. Excepting only as stated above, the Memorandum and Order dated August 18, 2016, remains in effect. An appropriate order follows.